JAMES WHITEMAN

*v.*

JOHN A. ROBINSON AND NANCY ROBINSON

(No. 12043)

Submitted September 27, 1960. Decided October 25, 1960.

*Franklin W. Kern,* for plaintiff in error.

*Kingdon & Kingdon, Arthur R. Kingdon,* for defendants in error.

HAYMOND, JUDGE:

The petitioner, James Whiteman, the father of Julia Kathryn Whiteman, an infant, instituted this habeas

corpus proceeding in the Circuit Court of Wyoming County, in May 1959, to regain the custody of his daughter, then about three and one-half years of age, from the defendants, John A. Robinson and Nancy Robinson, who have refused to permit the petitioner to have the custody of his child.

The proceeding was heard in the circuit court upon the petition for the writ, the writ issued upon the petition, the answer of the defendants, the replication of the petitioner, the evidence heard by the court, and the depositions filed in behalf of the respective parties. By its final judgment rendered October 19, 1959, the circuit court discharged the writ and refused to award the custody of Julia Kathryn Whiteman to the petitioner on the ground that he had failed to prove that a change of custody from the defendants to the petitioner would promote the welfare of the child. To that judgment this Court granted this writ of error and supersedeas upon the application of the petitioner.

On September 27, 1960, this proceeding was submitted for decision upon the motion of the petitioner to reverse the judgment of the circuit court and upon the written briefs and the oral arguments in behalf of the respective parties.

The petitioner and Betty Ruth Robinson, a sister of the defendant John A. Robinson, were married in June 1949. After their marriage they resided in Hawaii for a period of about five years. Four children were born of the marriage, three of them while the petitioner and his wife lived in Hawaii. These children were James, born April 9, 1951, Laura P., born July 19, 1952, and Gregory A., born January 22, 1954. During the year 1954 the petitioner, his wife and the children returned to the neighborhood of Wetzel County, West Virginia, where the petitioner and his wife had been born, and where, while visiting with their parents, they remained for approximately one year. They then moved to Seattle, Washington, where the petitioner had obtained employment, and during their

residence in Seattle their youngest child Julia Kathryn was born on November 13, 1955.

On March 4, 1956, the wife of the petitioner, suffering a sudden abnormal mental affliction, disappeared from her home and her whereabouts were unknown until her death was determined and her body discovered twenty days later on March 24, 1956. During the interval between the disappearance of his wife and the discovery of her body the petitioner communicated with the members of his and her families in West Virginia concerning the absence of his wife and the situation confronting him and his four young children, and the defendant John A. Robinson, who is a successful practitioner of optometry residing in Mullens, West Virginia, went to Seattle and assisted the petitioner in bringing the children to West Virginia. Each of the three older children was left at the home of a member of petitioner's family or a member of the Robinson family on a temporary basis. Julia Kathryn, then about four months old, was taken by the defendants to live with them at their home in Mullens.

The petitioner testified that when he brought his children to West Virginia after the disappearance of his wife and before he learned of her death, his children were placed with his relatives to be cared for by them until his wife was found or he learned what had happened to her, or until he could arrange to take care of his then motherless children; and that he made it clear to the Robinsons that their possession of Julia Kathryn was of "a temporary nature only." That the custody of the child was to be merely temporary is not denied by the defendants; and the defendant John A. Robinson admitted in his testimony that when the petitioner permitted him and his wife to take the child to their home there was no understanding between the petitioner and the defendants concerning the length of time they were to keep her.

In April 1956 the petitioner was transferred to Chicago by his employer where he purchased a home and resided until he was transferred back to Hawaii

by the same employer in May 1957. Since that time he has purchased a suitable residence and he is now employed at a salary of about $8,000.00 a year and resides permanently in that community.

In the interval between April 1956 and May 1957, the petitioner, during his vacation periods, visited his children in West Virginia and he made four or five visits to the home of the defendants to see Julia Kathryn. He has not contributed financially to her support and maintenance for the reason that the defendants did not want him to make any contribution for that purpose because they desired to and did furnish such support and maintenance.

In April or May of 1957, before his return to Hawaii, the petitioner received from his relatives the prompt and willing possession of his three older children who accompanied him to Hawaii and are now living with him and his present wife, to whom he was married in May 1958. While contemplating such marriage the petitioner discussed with the defendants its probable effect with respect to Julia Kathryn and the defendant John A. Robinson suggested that the petitioner should agree that the defendants should continue to keep her in their home for a period of one year after the petitioner should remarry. The petitioner refused to consent to that arrangement but testified that while he was located in Chicago he did consent that the defendants could continue to keep Julia Kathryn for six months after he should remarry. The arrangement between the petitioner and the defendants concerning their possession of the child, as recognized and admitted by the defendants, is indicated by a letter from the defendant John A. Robinson to the petitioner, dated February 10, 1958, in which he congratulated the petitioner upon his coming wedding and wished him and his wife a happy life together. The letter also contains these paragraphs with respect to Julia Kathryn:

"Next I want to remind you of an agreement we had and re-examine the purpose behind it. When you

were last in Mullens we came to an agreement about Julie that it seems, possibly in the excitement of your coming nuptials, that you have forgotten, however, since the substance of that agreement is still important to me, I must refresh your memory, and beg of you to be as good as your word. If you will recall you agreed that Julie would be better off in Mullens for at least six months (6) after any future wedding by you. I thought twelve (12) months was a better figure but you would not agree to twelve, saying that six would be sufficient.

"The reasoning behind the agreement was two-fold. Since a new marriage has some difficult paths to traverse, we *deaded* a six month trial as to the soundness of the marriage would be advisable before putting Julie's future at stake. Secondly we decided that it would be much easier for your new wife to adjust to the job of caring for 3 children before a fourth was added."

An earlier letter from the same defendant to the petitioner, dated August 15, 1957, contains this language: "We are hoping and praying now that you will be given guidance to do and decide for Julie what is best for her from her own personal viewpoint. I know you and I could never agree as to what is best! I can't see how you could ever better her chances in life by taking her from here. There are many reasons for this viewpoint. Many which I think you will have to agree with. On the other hand I will agree you could offer some advantages she could not get here. In any event however I say again that we are praying for you to be given guidance to do the proper thing for her as we must abide by your decisions."

In May 1959, the petitioner came to Mullens and informed the defendant John A. Robinson that he intended to take possession of his child on the following morning. The defendants refused to deliver possession of the child to the petitioner and this proceeding resulted from the refusal. The defendant John A. Robinson, admitting their refusal, testified that their

reason was that they had decided that it was for the best interest of Julia Kathryn that she should stay in Mullens permanently. He also testified that he and his wife had agreed to surrender the child to the petitioner after he had been remarried satisfactorily for six months, that the six months had expired, and that he and his wife have now decided that the agreement is not binding on them. The evidence also shows that the defendants requested the petitioner to permit them to adopt the child and that the petitioner repeatedly refused to permit them to adopt her.

The petitioner, who is about thirty five years of age, is regularly employed and owns a suitable residence in Hawaii. He is married to a well respected woman who is a native of Hawaii of Japanese ancestry and an American citizen. She is well educated, capable, and has employment which enables her to earn about three thousand dollars a year. She is the mother of three children by a former marriage. Those children, who are about sixteen, fifteen and fourteen years of age, live with and are cared for by their father's mother, and the petitioner and his wife contribute to some extent to their support. The wife of the petitioner, who is about thirty eight years of age, is fond of the three children of the petitioner and has the services of a capable housekeeper to assist her in caring for them. She wants to have Julia Kathryn in her present home and to assist the petitioner in rearing and caring for her. The petitioner and his wife are persons of good moral character, are regularly attending church members, are interested in the education of children, and are financially able properly to educate, rear and care for Julia Kathryn and the three other children of the petitioner who are now living in their home. The evidence also shows that the defendants are excellent people of good moral character and are highly respected in the community in which they live, and that they are devoted to the child. They own a suitable home which is adequate for the needs of the family and their financial posi-

tion apparently is somewhat stronger than that of the petitioner. They have one daughter who was born after Julia Kathryn came to their home and the defendant Nancy Robinson when she testified in this proceeding was expecting the birth of her second child.

The circuit court found that both the petitioner and his present wife and the defendants are suitable persons to have the care and custody of the child. In his written opinion filed as a part of the record, the learned judge of that court said: ''There is no present question about the good moral character of the home facilities which the child would be taken to in the petitioner's home in the now State of Hawaii and there is no doubt but what the Robinsons are excellent people, of good moral character, highly respected in the community in which they live and deeply devoted to Julia.''

The controlling question for decision in this proceeding is whether the petitioner, in permitting the defendants, in the unusual circumstances with which he was confronted consisting of the sudden death of his wife and the then present responsibility of caring for four motherless children of tender years, by agreement or otherwise, transferred, relinquished or surrendered the permanent custody of his infant daughter to the defendants.

This Court has held in many cases that when a parent, by agreement or otherwise, has transferred, relinquished or surrendered the custody of his or her child to a third person and subsequently demands the return of the child, the action of the court in determining whether the custody of the child shall remain in such third person or whether the child shall be returned to its parent depends upon which course will promote the welfare and best interests of the child; and the parent will not be permitted to reclaim the custody of the child unless the parent shows that such change of custody will materially promote the moral and physical welfare of the child. *Davis v. Hadox*, 145

W. Va. 233, 114 S. E. 2d 468; *Lucyk v. Brawner,* 144 W. Va. 690, 110 S. E. 2d 739; *State ex rel. Harmon v. Utterback,* 144 W. Va. 419, 108 S. E. 2d 521; *Bell v. Eicholtz,* 132 W. Va. 747, 53 S. E. 2d 627; *State ex rel. Lipscomb v. Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *State ex rel. Cooke v. Williams,* 107 W. Va. 450, 148 S. E. 488; *Odlasek v. Odlasek,* 98 W. Va. 357, 127 S. E. 59; *State ex rel. Coffield v. Bonar,* 75 W. Va. 332, 83 S. E. 991; *Fletcher v. Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L.R.A. 896, 88 Am. St. Rep. 862; *Cunningham v. Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green v. Campbell,* 35 W. Va. 698, 14 S. E. 212, 19 Am. St. Rep. 843. In each of the cases just cited the parent intended to transfer, relinquish or surrender the permanent custody of his child and by agreement or otherwise did transfer, relinquish or surrender such custody. In this proceeding, however, it is clear that the petitioner never intended to transfer, relinquish or surrender the custody of his child to the defendants and that he never made any such agreement or any outright transfer to them of the custody of the child. On the contrary the undisputed evidence of the petitioner and the defendant John A. Robinson is that the petitioner, when confronted with an unsual emergency in his family, merely consented that the defendants should have the possession of his child on a temporary basis and until such time as he could provide a proper and suitable home and make provision for her present and future care and welfare. This he has done. It is also clear that the temporary possession of the child by the defendants was to terminate whenever the petitioner decided to terminate such possession or, in any event, at the expiration of six months after any remarriage of the petitioner. Temporary custody to a third person is not tantamount to a divestiture of the right of a parent to the custody of his or her child. 67 C.J.S., Parent and Child, Section 11c. For these reasons the principle recognized and applied in the cited cases, which precludes a parent, who by agreement or otherwise has transferred, relinquished or surrendered the custody of his or her

child to a third person, from reclaiming the custody of the child unless the parent shows that such change of custody will materially promote the moral and physical welfare of the child, does not apply to the undisputed facts established by the evidence and is not controlling in this proceeding. On the contrary the natural right of a parent to the custody of his or her child must be accorded full force and effect.

Section 7, Article 10, Chapter 44, Code, 1931, provides, in part, that the father and mother of any minor child shall, with equal powers, rights and duties, be entitled to the custody of the person of such child and to the care of its education and that if the father and mother are living apart, the court, to which the application is made for the appointment of a guardian, shall appoint the parent who is, in the opinion of the court, best suited for the trust, considering the welfare and best interests of such minor child. This right of a parent to the custody of his or her child, though not absolute, is likewise founded on natural law and arises because the child is his or hers to care for and rear. *Hoy v. Dooley,* 144 W. Va. 64, 105 S. E. 2d 877; *Stout v. Massie,* 140 W. Va. 731, 88 S. E. 2d 51; *State ex rel. Lipscomb v. Joplin,* 131 W. Va. 302, 47 S. E. 2d 221; *Pukas v. Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *State ex rel. Bennett v. Anderson,* 129 W. Va. 671, 41 S. E. 2d 241; *Straughan v. Straughan,* 115 W. Va. 639, 177 S. E. 771; *State ex rel. Palmer v. Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Connor v. Harris,* 100 W. Va. 313, 130 S. E. 281; *Fletcher v. Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L.R.A. 896, 88 Am. St. Rep. 862; *Cunningham v. Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green v. Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; *Rust v. Vanvacter,* 9 W. Va. 600. This right of a parent will be respected when it has not been transferred or abandoned. *Hoy v. Dooley,* 144 W. Va. 64, 105 S. E. 2d 877; *Settle v. Settle,* 117 W. Va. 476, 185 S. E. 859; *Straughan v. Straughan,* 115 W. Va. 639, 177 S. E. 771; *Pierce v. Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A.L.R.

1502; *Buseman v. Buseman,* 83 W. Va. 496, 98 S. E. 574; *Cunningham v. Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57. In order to separate a child from its parent on the ground of the unfitness of the parent there must be cogent and convincing proof of that fact. *Pierce v. Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A.L.R. 1502; 14 Michie's Jurisprudence, Parent and Child, Section 7. In this case there is no such proof.

In 46 C. J., Parent and Child, Section 11c, the text, supported by the decisions of the appellate courts of many of the states, contains these statements: "A parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons, and this rule applies although such others are much attached to the child, and the child is attached to them, and perfers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, or even though they are better able to afford the child material advantages. The state cannot, it has been said, interfere with the right of unoffending parents to the custody of their children merely to better the moral and temporal welfare of the latter." See also 67 C.J.S., Parent and Child, Section 11c. Substantially the same statements are quoted with approval in the concurring opinion of Judge Lively in *State ex rel. Palmer v. Postlethwaite,* 106 W. Va. 383, 145 S. E. 738. In that case the father of a fourteen year old girl was held to be entitled to her custody instead of her grandmother who had been permitted by the father to have the custody of the child on a temporary basis and until the father was able to assume direct responsibility properly to care for and rear his child. In the recent case of *State ex rel. West Virginia Department of Public Assistance v. See,* 145 W. Va. 322, 115 S. E. 2d 144, the opinion contains this pertinent language: "We have never held that a parent or other person having legal right to custody of an infant may

be deprived of such custody, absent any neglect, mistreatment or some voluntary act on the part of such parent or person." In the early case of *Rust v. Vanvacter,* 9 W. Va. 600, this Court held in point 6 of the syllabus that a father is the natural guardian of his infant child and in the absence of good and sufficient cause, such as ill usage, grossly immoral principles or habits, or want of ability, is entitled to its custody, care and education. Under the foregoing authorities a parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment. or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

The evidence in this case shows that the petitioner is a suitable person to have the custody, care and control of his child; that he is fond of her; that he is a person of good moral character; that he is financially able and is willing to support, care for and educate his child; and that he has provided a suitable christian home for her care and education. The evidence further shows that he has never neglected or mistreated her and that he has never, by agreement or otherwise, transferred, relinquished or surrendered the custody of his child to the defendants but instead has in effect merely permitted them to have the temporary possession of the child subject to the right of the petitioner to terminate such possession at any time or, in any event, at the expiration of six months after the petitioner should remarry. To award the custody of his infant daughter to the petitioner would in no wise impair but instead would preserve and safeguard the welfare of his child. Under the undisputed facts and circumstances shown by the evidence, the petitioner as her father and natural guardian is entitled to the custody of his infant daughter. To deny him that

right in this proceeding would permit any person who obtains possession of a child and forms an attachment for it to take and keep permanently the child of any worthy parent and in that manner to disrupt the unity of any family and destroy the happiness of its members. As pointed out by Judge Lively in his concurring opinion in *State ex rel. Palmer v. Postlethwaite,* 106 W. Va. 383, 145 S. E. 738: "It would be a dangerous and perversive doctrine to hold that the mutual affections of the child and its temporary custodian should annul the parent's natural right to his offspring. Mutual affections nearly always spring up between a young child and its custodian even though there may be no blood relationship." The law does not recognize and this Court will not sanction any relationship which produces mutual affection between a child and its temporary custodian and which leads to the annulment of a suitable parent's natural right to the care, custody and control of his child.

The motion to reverse the judgment of the Circuit Court of Wyoming County is sustained, the judgment is reversed and this proceeding is remanded to that court with directions that it forthwith award the custody of Julia Kathryn Whiteman to the petitioner and order the defendants to pay the costs of this proceeding.

*Reversed and remanded
with directions.*