State *ex rel.* Arthur N. Thabet, *etc., et al.*

*v.*

Diane Pursley Thabet

(No. 12996)

Submitted September 2, 1970.     Decided October 6, 1970.

*Preiser, Greene, Hunt & Wilson, L. Alvin Hunt,* for relators.

*Adams & Skeen, Larry L. Skeen,* for respondent.

BROWNING, PRESIDENT:

This is an original proceeding in habeas corpus instituted by the State of West Virginia at the relation of Arthur N. Thabet as father and next friend of Janie Jeanette Thabet and Scott Alan Thabet, infants, and in his own right along with Alice Roush Thabet, hereinafter sometimes referred to as relators, against Diane Pursley Thabet, hereinafter sometimes referred to as respondent.

Relator, Arthur Thabet, alleges that on August 11, 1970, the respondent, his ex-wife, obtained possession of the two infant children, Janie Jeanette and Scott Alan, from him for the purpose of taking them on a picnic, but instead took them to the place of residence of their maternal grandparents without the knowledge or consent of relator. Relator complains that this detention and restraint of the children is illegal since by agreements between him and respondent, dated October 3, 1969, and January 7, 1970, he was given permanent custody, control and education of them with respondent being given only visitation rights. The October 3, 1969, agreement was allegedly approved by a Mexican court in a decree entered January 14, 1970.

In addition to this, relators further maintain that respondent is not a fit and proper person to have custody of the children. Relators allege that respondent has had "periods of mental instability and on numerous occasions has had to be physically restrained from doing serious bodily injury to . . . Janie Thabet" ever since the child was born in June of 1960. Furthermore, in 1963 respondent was a patient in the Harding Sanitarium, Columbus, Ohio, and relator believes the treating doctors were of the opinion that respondent "manifested suicidal tendencies among other mental disorders and was in need of professional treatment," but that she declined to submit to such treatment. Relators go on to allege that since that time respondent has suffered severe mental and emotional problems for which she is continually in need of tranquilizing

drugs. Relators also allege upon information and belief that respondent was confined in Spencer State Hospital upon a lunacy warrant but was released through the intercession of friends. Relators also allege that while Arthur and the respondent were married, respondent neglected the children and "afforded them very little care and attention." In addition, during this period respondent made "frequent and extended visits with her friends and acquaintances of the female sex," and relators cite an instance where respondent's activities in this regard led to neglect of one child, Janie, while ill. Furthermore, relators maintain that for the past ten years respondent "has carried on an illicit, extramarital sexual relationship and has been guilty of grossly immoral conduct and behavior." All of these allegations, relators contend, show that respondent is not a fit and proper person to have custody of the children.

To corroborate these allegations, relators have also submitted as an exhibit the affidavit of one Jane Powell, a clinical psychologist, who arrived at similar conclusions about respondent's mental condition. Affiant points out that she did not test respondent in her professional capacity, but bases her observations on personal contact with respondent for a period of approximately twelve years.

In answer to all of this, respondent first denies that the relators are husband and wife because no legal divorce has ever been decreed by a court with competent jurisdiction over the parties, and, thus, relator Arthur Thabet and the respondent are still married. Respondent maintains that because of this the children have been illegally restrained from her since January, 1970, by the relators. Respondent also admits that she and Arthur are separated but this is because of his forceful eviction of her from their home and his living in "continuous adultery" with Alice Roush ever since his return from a one-day trip to Juarez, Mexico, on January 14, 1970, where he "purported to obtain a divorce."

Respondent denies that her custody of the children is illegal since the two separation agreements "are void and of no legal force or effect, due to the fact that . . . respondent

was threatened with certain acts by relator . . . and was therefore forced and coerced into signing said agreements." Also, respondent says that the custody provisions were not even supposed to be in effect until sometime around June 5, 1970, because of the following language in the first agreement:

> WHEREAS, the said Wife has advised her husband that at the *end of this school year* she intends to leave the dwelling now occupied by the parties hereto and permanently live separate and apart from her said husband. (Emphasis added.)

Furthermore, respondent says the agreements are not incorporated into the divorce decree, and are, thus, not in effect. In addition, she alleges that relator has breached the agreement by refusing to relinquish certain personal property and money to her.

In support of her contention that the divorce decree is void and illegal, respondent avers that relator did not establish a domicile or residence in Mexico and that she did not receive a summons or notice of the time and place of the divorce hearing nor has she ever been within the territorial limits of Mexico.

Respondent also denies that she is not a fit and proper person to have custody of the children and submits eighteen affidavits bearing on her fitness and good moral character. She admits that she was in the Harding Hospital in 1963 for psychiatric treatment on a voluntary basis during her second pregnancy, but denies that she ever harmed the children or had to be physically restrained from doing such by relator. She denies she has ever had mental or emotional problems for which she was in constant need of tranquilizers, but admits that she and relator both did take tranquilizers occasionally. Neither, she maintains, did she ever have suicidal tendencies as alleged by relators. Respondent admits that she was taken into custody under a lunacy warrant initiated by her mother, but was never taken to Spencer State Hospital since her mother withdrew the warrant when she found out she had based her actions on "misrepresentations communicated to [her] by the relator, Arthur N. Thabet." Respondent

denies that she ever neglected the children or left them unattended or unsupervised as alleged by relators.

In addition to all of this, respondent alleges that relator was having an extramarital "affair" with Alice Roush prior to January, 1970, and had been "counselling" with his attorney with regard to the necessary grounds to divorce respondent in the Mason County Circuit Court. According to respondent, pursuant to legal advice, relator began harassing her and told her that if she did not grant him a divorce and sign a separation agreement he would tell the Superintendent of Schools of Mason County (where respondent taught) that respondent was having a sexual affair with Jane Powell and that respondent was mentally ill, in order to have her employment terminated. Respondent notes that relator did in fact do this after she signed the agreements and another document. Respondent admits that before and during all of this she did spend a considerable amount of time with Jane Powell, whom she knew to be a Lesbian, but that this was upon relator's encouragement, and respondent maintains that she had no idea at the time that relator was encouraging this friendship in order to build a divorce case.

Respondent further says that in June of 1970 she returned to her parents' home and has since taken a teaching position in Roane County. She maintains that she is the proper party to have custody of the children since relators mistreat the children and "are both of grossly immoral character as can be seen by the fraud and deceit practiced upon . . . respondent." She also alleges that "relators are attempting to use this Honorable Court to ratify and confirm the fraudulent and . . . void Mexican divorce . . . and thus to ratify the subsequent void marriage of relators in an attempt to avoid criminal sanctions against them." Respondent additionally denies that Jane Powell's affidavit corroborates relators' allegations and says that respondent's own affidavits "show the true and evil character of Jane Powell." She denies that Jane Powell has a doctoral degree in psychology and claims that Powell has herself been in a mental institution, and, thus, could not express a meaningful opinion as to respondent's

mental condition. Along with other exhibits to corroborate her denials and allegations, respondent has also included two letters from her daughter, Janie, which purportedly show the love and affection and lack of fear the children have for their mother.

In conclusion, respondent requests that this Court declare the separation agreements null and void, declare the Mexican divorce a nullity, discharge the writ of habeas corpus, remand the children to her custody, and declare any bond posted by relators forfeited in favor of respondent and award her costs and fees which she has expended in defending this action.

As may be concluded from the foregoing statement of the case, this Court in vacation issued a writ of habeas corpus on August 18, 1970, commanding the respondent to deliver custody of the children to the Sheriff of Randolph County and, thus, returned to the custody of the relators pending the outcome of this case, and to appear before this Court and show cause on September 2, 1970. On that date the case was submitted for decision upon oral argument and briefs.

It is the view of this Court to disregard the collateral attack in this habeas corpus proceeding by the respondent upon the so-called "Mexican divorce." We do not consider that controlling, whether the prior separation agreements were contained in the order or not. The respondent is correct in her contention that we are not required to give full faith and credit to a divorce decree of a foreign jurisdiction as was stated in the very recent case of *State ex rel. Domico v. Domico*, 153 W.Va. 695, 172 S.E.2d 805. Furthermore, we are in agreement with the respondent's contention that where a parent has, by a valid agreement or otherwise, relinquished or surrendered the custody of his or her child, such parent may regain custody upon a showing that such change of custody would materially promote the moral and physical welfare and best interest of the child. That principle was stated in *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691, citing many previous decisions in support thereof. In *Davis v. Hadox*, 145 W.Va. 233, 114 S.E.2d 468, this Court held that when a parent has "by agreement or otherwise" relinquished

or surrendered the custody of a child, the burden of proof is upon such parent in a proceeding to regain the custody. Of course, the rule is particularly applicable where a contest for the custody of a child is between the mother and father.

We have refrained from reciting all of the evidence in this case with regard to whether the respondent is a proper person to regain the custody of her children believing that it is unnecessary to do so in deciding this case. However, there are several affidavits of her female friends, the contents of which have not been disputed, that would cast serious doubts as to whether she should have the custody of the children. The written agreement by which she surrendered (or, rather, agreed to surrender) the custody of the children to the male relator at a subsequent date was prepared by a reputable Point Pleasant attorney who represents neither of the parties in this proceeding, and there has been submitted, as an exhibit, the original letter from him enclosing the agreement and stating that if the agreement is "not exactly as you and your wife want it" he would rewrite it and comply with their wishes. The agreement was signed by both without change.

Also uncontradicted is an affidavit by Dorsey Scott who is presently Superintendent of Schools of Wetzel County but who in 1967 was Assistant Superintendent of Schools of Mason County. This affidavit is to the effect that he had reservations about reappointing the respondent for the ensuing school term because of rumors in the community. Respondent had denied all of these rumors. However, he states that respondent and the male relator came to his office where the former made certain admissions which would seem to substantiate the allegations contained in the petition and in the affidavits of several other witnesses. Both the respondent and the male relator informed him that all that was discussed was in the past and that they were reconciled. The affiant said that he then decided to recommend the respondent for employment for the coming school term.

There is also contained in the record, as an exhibit, a letter addressed to the respondent from a certain alleged "foundation" dated May 26, 1970, answering a letter of the respondent

dated April 29, 1970, which strongly indicates she was still interested in pursuing a course of activity that would not be conducive to having the custody of and rearing the two children. That letter was written several months after the respondent left the home in Point Pleasant.

The respondent secured the custody of her children by subterfuge and took them to another county without permission or without even the knowledge of the father who had for many months had at least the physical custody of them. She did not go to a court of law as she could have done if she had good reason for securing the custody of her children, and it is the view of this Court that she has failed wholly to sustain the burden of proof of showing that the welfare of the children would be promoted by transferring the custody of the children from the male relator to her. Therefore, it is the view of this Court that, upon the writ of habeas corpus heretofore granted, the custody of the two children remain with and shall be in the male relator, their father, Arthur N. Thabet.

*Custody awarded.*