# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: G.W., P.W., A.W., & B.W.**

**FILED**

October 20, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**No. 15-0465** (Mineral County 13-JA-12 through 13-JA-15)

## MEMORANDUM DECISION

Petitioner Father, by counsel Agnieszka Collins, appeals the Circuit Court of Mineral County's December 23, 2014, order terminating his parental rights to eleven-year-old G.W., nine-year-old P.W., six-year-old A.W., and five-year-old B.W. The Department of Health and Human Resources ("the DHHR"), by counsel, Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Zelene Harman, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for custody, adjudicating him as a neglectful parent, terminating his post-adjudicatory improvement period, and terminating his parental rights.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2013, the DHHR received a referral from the Mineral County Sheriff's Office after deputies took emergency custody of the children after responding to two domestic violence 911 calls at the home of the children's mother, D.W., and her then-current boyfriend, D.L. When the deputies arrived at D.W.'s home she was "unresponsive" and the children were running around the home unsupervised. D.L. fled the residence and was considered to be armed and dangerous. During the investigation, G.W. and P.W. told investigators that they witnessed repeated acts of domestic violence and drug use. G.W. and P.W. also told investigators that D.W. exposed them to sexual activities. G.W. and P.W. further stated that D.L. abused them and A.W. and B.W. Finally, D.W. admitted to investigators that she abused alcohol and that the children were unsafe when the deputies took emergency custody of the children. Several days later, the DHHR filed a petition for abuse and neglect based upon the referral. Petitioner was initially named as a non-abusing father because he lived in Allentown, Pennsylvania.

---

[1] We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

On June 18, 2013, the circuit court held a preliminary hearing. Petitioner participated by telephone and waived his right to this preliminary hearing. The circuit court granted petitioner's motion for telephone visitation only and the DHHR's motion to temporarily separate the siblings. A multidisciplinary team ("MDT") was conducted following the preliminary hearing during which petitioner admitted that he had not seen his children since March of 2013, and that he is required to register as a sex offender.[2]

In August of 2013, petitioner moved for custody of his children, and his motion was opposed by the DHHR and the guardian because petitioner lived in Pennsylvania; has not had consistent contact with the children; and may not be able to financially, emotionally, or physically support the children. By order entered August 28, 2013, the circuit court deferred ruling on petitioner's motion pending a psychological evaluation. Another MDT meeting was conducted in January of 2014. Petitioner indicated to the MDT that he moved back to West Virginia, but that he was unemployed and homeless. The guardian recommended that the DHHR file an amended petition to include allegations of abuse and neglect against petitioner.

In February of 2014, the DHHR filed an amended petition for abuse and neglect against petitioner alleging that he failed to protect his children by leaving them in D.W.'s care. The petition also alleged that petitioner abandoned his children.

In May of 2014, petitioner stipulated that he abused and neglected the children based upon his failure to protect the children from D.W. and D.L., and that he was unable or unwilling to take the appropriate steps to remedy those issues. Thereafter, the circuit court granted petitioner a post-adjudicatory improvement period. The circuit court held a series of status hearings on the progress of petitioner's post-adjudicatory improvement period. The parties proffered to the circuit court that petitioner complied with the terms of his improvement period. As such, the circuit court continued petitioner's post-adjudicatory improvement period.

In November of 2014, the circuit court held a dispositional hearing. The circuit court heard testimony from several of petitioner's service providers. Petitioner's parenting provider testified that petitioner was arrested because he failed to register as a sex offender. The provider further testified that despite the fact that petitioner attended all of his parenting classes, he failed to implement the skills to address the underlying issues of neglect, and failed to understand how to protect his children from future harm. Petitioner's visitation supervisor testified that petitioner failed to properly supervise the children during visitation. Additional testimony corroborated that petitioner failed to accomplish the goals of his improvement plan. The circuit court continued the dispositional hearing until December 12, 2014. The parties presented additional testimony during the continued dispositional hearing. A Child Protective Services worker testified that petitioner's housing situation was uncertain. A Court Appointed Special Advocates ("CASA") worker testified that despite participating in parenting classes, petitioner has "been unable to control or parent his children effectively" and "incapable" of parenting his children. Based on the evidence presented, the circuit court found that petitioner failed to adequately solve the problems of abuse

---

[2]Petitioner was convicted of a third-degree sexual offense with a female victim between the ages of thirteen and seventeen in the State of Maryland. Petitioner served approximately eight months in prison. Petitioner was then given four years of probation.

despite the lengthy improvement period. Given those findings, the circuit court concluded that petitioner could not substantially correct the conditions of neglect in the near future and that termination was necessary for the children's welfare. By order entered December 23, 2014, the circuit court terminated petitioner's parental rights to the children. It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first assigns error to the circuit court's order denying his motion for custody of the children. While petitioner asserts that he was a non-abusing parent, and, therefore, entitled to the physical and legal custody of the child, we have explained that

> "[a] parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syl. Pt. [sic] *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).

Syl. Pt. 1, *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989). Moreover, the guiding principle in all matters concerning child custody is the best interests of the child. "'Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013); "[t]he best interests of the child[ren] is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (internal citations omitted).

Upon our review of the record on appeal, the Court finds no error in the circuit court's order denying petitioner's motion for custody of the child. The evidence before the circuit court established that petitioner was an unfit parent due to the uncontested fact that petitioner had not seen his children for approximately five months prior to making his motion for custody, that he was a registered sex offender, and that he had never been the children's full-time custodial parent. Importantly, a home study revealed that petitioner was "not physically prepared to assume custody of the children" and that petitioner expected to be homeless in the near future. Based on the facts of this case, we find no error in this regard.

Next, petitioner argues that the circuit court erred in adjudicating him as a neglectful parent. Simply put, there is no merit to petitioner's argument that the circuit court erred in adjudicating petitioner as a neglectful parent. In support of this assignment of error, petitioner argues that there was not clear and convincing evidence that he neglected his children. West Virginia Code § 49-1-3(11)(A) a "'neglected child' means a child [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary . . . supervision[.]" It is undisputed that petitioner freely and voluntarily stipulated that he neglected his children based upon his failure to protect his children from D.W. and D.L., and that he was unable or unwilling to take the appropriate steps to remedy those issues. *See* Rule 26 of the Rules of Procedure for Child Abuse and Neglect Proceedings (stating that "[b]efore accepting a stipulated . . . adjudication, the court shall determine that the parties . . . voluntarily consent, and that the stipulation . . . meets the purposes of these rules and controlling statute and is in the best interests of the child"). Based on petitioner's voluntary stipulation, we find no error.

Next, petitioner argues that the circuit court erred in terminating his post-adjudicatory improvement period. Petitioner's argument on this issue ignores controlling statutory law regarding abuse and neglect proceedings. Specifically, West Virginia Code § 49-6-12(b) grants circuit courts discretion in granting post-adjudicatory improvement periods, but specifically states that such improvement periods are "not to exceed six months[.]" In the instant matter, petitioner's improvement period began on May 27, 2014, and expired on November 27, 2014. The circuit court appropriately continued petitioner's improvement period based upon his compliance until its natural expiration on November 27, 2014. Thereafter, the circuit court held its final dispositional hearing past the improvement period's expiration on December 12, 2014. Simply put, the circuit court did not terminate petitioner's improvement period, it naturally expired on November 27, 2014.

Moreover, West Virginia Code § 49-6-12(g) provides that

[a] court may extend any improvement period granted . . . for a period not to exceed three months when the court finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that such extension is otherwise consistent with the best interest of the child.

We have also held that the word "may" is permissive and connotes discretion. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. 618, 626 n. 12, 328

S.E.2d 492, 500 n. 12 (1985) ("An elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion." (citations omitted)). While petitioner argues that he substantially complied with the terms and conditions of his improvement period, that is just one factor to be considered. *See* Syl. Pt. 4, in part, *In re: B.H. and S.S.*, 233 W.Va. 57, 754 S.E.2d 743 (2014) (holding that "the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child"). While it is true that petitioner completed parenting classes, the record is clear that petitioner failed to implement skills taught in those classes, failed to properly supervise the children during supervised visitation, gave G.W. a MP3 player loaded with music that contained explicit language, and failed to acknowledge how he could prevent future neglect. Further, as noted above, whether to grant a motion for an extension of an improvement period is a matter within the sound discretion of the circuit court. For these reasons, we find no error.

Finally, petitioner argues that the circuit court erred in terminating his parental rights when he substantially complied with his improvement period and that termination not in the children's best interests. Pursuant to West Virginia Code § 49-6-5(b)(3), a respondent parent's failure to respond or follow through with a reasonable family case plan or other rehabilitative efforts constitutes circumstances in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected. Further, West Virginia Code § 49-6-5(a)(6) expressly provides for termination "upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected *in the near future*" (emphasis added) and when necessary for the child's welfare. The record clearly demonstrates that petitioner had approximately seven months to substantially correct the conditions that led to the abuse and neglect. However, he failed to do so. Although petitioner argues that he substantially complied with his improvement period, the record on appeal reveals that petitioner failed to implement many of the skills taught in those classes. A CASA worker testified that despite participating in parenting classes, petitioner has "been unable to control or parent his children effectively" and "incapable" of parenting his children. As we recently held, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re: B.H. and S.S.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Therefore, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II