# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: A.R., M.L., B.L., & J.L.**

**No. 15-0557** (Wyoming County 14-JA-1 through 14-JA-4)

**FILED**

October 20, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Father B.L., by counsel Karen S. Hatfield, appeals the Circuit Court of Wyoming County's May 18, 2015, order denying his motion for custody of fourteen-year-old A.R., twelve-year-old M.T., nine-year-old B.L., and seven-year-old J.L. The Department of Health and Human Resources ("the DHHR"), by counsel, S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Juliet W. Rundle, filed a response on behalf of the children in support of the circuit court's order. Respondent Mother, C.A., also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for custody.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2014, the DHHR received a referral stating that the biological mother, C.A., and her then-boyfriend were "cooking meth[amphetamine] in a pot in the bathtub" in C.A.'s house while the children were present. During the investigation, a Wyoming County Sheriff's Deputy discovered the presence of several items in C.A.'s home which were consistent with manufacturing methamphetamine. The deputy also opined that C.A. was "high" and had a "thick tongue" during the investigation. Based upon these allegations, the DHHR filed a petition for immediate custody of the minor child. The DHHR did not include any allegations against petitioner at that time. Accordingly, the circuit court found that the DHHR properly removed the children due to imminent danger. The circuit court placed the children in the physical custody of their paternal grandparents.

In February of 2014, the circuit court held a preliminary hearing. A CPS worker testified that evidence of a methamphetamine lab was found in C.A.'s home. The worker also testified

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

that C.A. and petitioner were the subject of a prior abuse and neglect proceeding involving drug abuse. According to the workers testimony, petitioner was "completely non-cooperative" in the prior abuse and neglect proceeding. Importantly, the circuit court granted C.A. custody of the children at the conclusion of the prior abuse and neglect proceeding. Based upon this testimony, the circuit court found probable cause that the children were abused and neglected. By order entered March 13, 2014, the circuit court granted C.A. a pre-adjudicatory improvement period. The circuit court also adjudicated petitioner as a non-offending father and transferred physical custody of the children from the paternal grandparents to petitioner. As terms and conditions of C.A.'s improvement period, she was ordered to submit to random drug screens.

In May of 2015, the circuit court held a status hearing on the progress of C.A.'s pre-adjudicatory improvement period. The DHHR submitted a court summary indicating that C.A. was "doing very well" on her improvement period, and recommended that the improvement period continue. The court summary also indicated that the DHHR received a referral that the children were afraid of petitioner because of a recent physical altercation between petitioner, petitioner's girlfriend, and A.R. A.R. reported that petitioner hit her in the face repeatedly and that petitioner's girlfriend was hit while trying to intervene. The other children corroborated A.R.'s statement. Petitioner admitted to a DHHR worker that he hit A.R. repeatedly with a belt. By order entered July 2, 2014, the circuit court extended C.A.'s pre-adjudicatory improvement period and transferred custody of the children from petitioner's home, back to the home of the paternal grandparents.

In August of 2014, the DHHR filed a court summary that indicated that C.A. tested negative for drugs eight times, but tested "negative dilute" thirteen times. The following month, C.A. stipulated that the children were abused and neglected based upon her drug use. The circuit court granted petitioner a post-adjudicatory improvement period. As terms and conditions of C.A.'s improvement period, she was ordered to submit to random drug screens. The circuit court also transferred physical custody of the children from the home of the paternal grandparents, back to petitioner's home.

The circuit court held its first dispositional hearing in November of 2014. The DHHR proffered that C.A. was "doing well" on her post-adjudicatory improvement period and moved for an extension. Petitioner objected to the extension on the basis that C.A.'s had another diluted drug screen after the prior hearing. By order entered December 31, 2014, the circuit court extended C.A.'s post-adjudicatory improvement period. Furthermore, the parties agreed that C.A. would submit to having her blood tested for alcohol and controlled substances as this would eliminate the possibility of a diluted result.

In February of 2015, the DHHR held a status hearing on the progress of C.A.'s post-adjudicatory improvement period. The DHHR submitted a court summary that indicated that petitioner was involved in a domestic altercation with his girlfriend in the presence of the children. The summary further notes that petitioner accidentally shot himself in the leg and had to be hospitalized. As a result, the DHHR removed the children from petitioner's custody on January 31, 2015. By order entered March 17, 2015, the circuit court ratified the transfer of physical custody to the paternal grandparents. Further, the circuit court continued C.A.'s dispositional hearing pending the results of her blood test.

In March of 2015, the circuit court held its final dispositional hearing. Again, the DHHR proffered that C.A. "has done extremely well in the post adjudicatory improvement period" and moved to dismiss the case against C.A. and return the children to her custody. The DHHR also indicated that C.A.'s blood test was negative for illegal substances. Petitioner objected and moved for custody of the children. By order entered May 18, 2015, the circuit court denied petitioner's motion for custody of his children. Further, the circuit court found that it was in the children's best interests to reunify them with C.A. and dismissed the petition for abuse and neglect against C.A. It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that C.A. substantially complied with her improvement period. Specifically, petitioner argues that the DHHR failed to present sufficient evidence that C.A. completed her improvement period, and that her completion of the improvement period warranted reunification.

The Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Contrary to petitioner's argument that C.A. did not attain the goals of her improvement period, the circuit court was presented with ample evidence to support its finding that C.A. successfully completed her improvement period. Here, the circuit court held several status hearings on the progress of C.A.'s improvement periods throughout the underlying proceedings. The DHHR's court

3

summaries submitted during those hearings indicate that C.A. "[was] doing very well" and "[a]ll of her drug screens [were] negative but two." Additional summaries indicate that C.A.'s service workers had "minimal concerns." The DHHR also presented evidence that C.A.'s final blood sample was negative for illegal substances. During the final dispositional hearing, the DHHR proffered that "[C.A.] has done extremely well in the post adjudicatory improvement period so much so, that the State . . . moves to dismiss." Based upon the evidence presented, the Court finds no abuse of discretion in the circuit court's ruling on this issue.

Further, the Court declines to disturb the circuit court's order denying petitioner's motion for custody of the children, especially in light of the unusual circumstances of this case. While petitioner asserts that he was a non-abusing parent, and, therefore, entitled to the custody of the children, we have explained that

> "[a] parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syl. Pt. [sic] *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).

Syl. Pt. 1, *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989). Moreover, the guiding principle in all matters concerning child custody is the best interests of the child. "'Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S*., 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M*., 231 W .Va. 44, 743 S.E.2d 352 (2013); "[t]he best interests of the child[ren] is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T*., 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (internal citations omitted).

Upon our review, the Court finds no error in the circuit court's order denying petitioner's motion for custody of the children. The evidence before the circuit court established that petitioner was an unfit parent due his domestic violence issues. Further, petitioner failed to prove that a change in custody would promote the welfare of the children. *See* Syl. Pt. 2, *Cloud v. Cloud*, 161 W. Va. 45, 239 S.E.2d 669 (1977) (holding that "[t]o justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child.") As noted above, the DHHR had to remove the children from petitioner's custody for domestic violence issues on two separate occasions, which included an incident were petitioner admitted to repeatedly hitting A.R. with a belt. The DHHR also removed the children from petitioner's custody after a domestic altercation with his girlfriend in the presence of the children, which resulted in petitioner accidentally shooting himself in the leg. Additionally, we note that, according to the guardian, it is the children's desire to live with C.A. Based upon the evidence presented, the circuit court found that it was in the children's best interests to deny petitioner's motion for custody and to return the children to the legal and physical custody of C.A. We find no error in this regard.

For the foregoing reasons, we affirm.

4

Affirmed.

**ISSUED:**  October 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II