# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* D.C.

No. 18-0158 (Mingo County 17-JA-47)

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.C., by counsel Diana Carter Wiedel, appeals the Circuit Court of Mingo County's January 18, 2018, order terminating his parental rights to D.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cullen Younger, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to place the child in his custody when the petition was filed and in terminating his parental rights when no evidence was presented that he abused or neglected the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that the mother and her boyfriend dropped the child off at the home of his maternal aunt and moved to North Carolina in order to seek employment. The maternal aunt reported the mother maintained minimal contact with the child after he was left in her care. According to the aunt, the child disclosed abuse by the mother's boyfriend, including that the boyfriend burned his hands and genitals with a lighter; hit his buttocks, head, and genitals with a back-scratcher; forced him to eat feces; and failed to feed him. The aunt reported that a maternal uncle previously reported observing the mother's boyfriend attempt to drown the child in the bathtub. The aunt noted that she had to keep her doors locked at all times because the child was scared the mother and her boyfriend would return and take him from her home, and she noted that the child often checked to ensure the doors were locked. Regarding petitioner, the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

DHHR alleged that it was unable to contact him and that his last known address was in Nevada. Further, petitioner was in arrears on his child support payments and had not visited the child.

The preliminary hearing was continued several times in order to serve the parents, who continued to reside in other states. Petitioner filed a response denying the allegations contained in the petition and denying that placement of the child with any person other than himself was in the child's best interest. Petitioner also requested permission to attend the preliminary hearing via telephone call, which was granted. In September of 2017, the circuit court held the preliminary hearing. Counsel for petitioner attempted to call petitioner during the hearing but was unable to reach him. Two Child Protective Services ("CPS") workers testified that petitioner had not been involved in the child's life and had not protected the child from abuse. The workers' testimony established that petitioner failed to call the child or offer any means of support, admitted that he did not have significant contact with the child, and failed to maintain contact with the DHHR.

In November of 2017, the circuit court held an adjudicatory hearing wherein counsel for petitioner advised that she had not heard from petitioner since prior to the preliminary hearing. Petitioner's counsel stated that she made several attempts to contact petitioner since that time, with no success. The circuit court took judicial notice of all prior testimony, findings of fact, and conclusions of law and ultimately adjudicated petitioner as an abusing parent.

The circuit court held a dispositional hearing in December of 2017, wherein it took judicial notice of the prior findings of fact, conclusions of law, and testimony. Petitioner failed to attend but was represented by counsel. The guardian's report was submitted into evidence and the guardian expressed that he only received a "couple" of phone calls from petitioner throughout the proceedings. The guardian stated that he informed petitioner that he needed to contact the DHHR so that services could be arranged in Nevada, but that petitioner never followed through with his advice. The guardian's report also indicated that the child was asked whether he wanted to speak to petitioner on the phone and that he responded that he did not and that he was afraid of petitioner. After hearing evidence, the circuit court found that petitioner made no efforts and did not appear during the proceedings, was unable or unwilling to adequately provide for the needs of the child, that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future, and that termination was necessary for the child's welfare. It is from the January 18, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

[2]The parents' parental rights were terminated below. The permanency plan for the child is adoption by a relative.

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in failing to place the child in his custody at the time the petition was filed. According to petitioner, the DHHR made no attempt to contact him regarding placement of the child and such conduct is a "travesty of justice." We find petitioner's argument to be without merit. This Court previously held as follows:

A parent has the natural right to the custody of his or her infant child, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Syl., *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960). However, we have also recognized that, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Moreover, "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).

Here, the record is rife with instances of the DHHR, the guardian, and petitioner's counsel attempting to ascertain petitioner's whereabouts, to contact him in order to provide an update on the status of the proceedings, and to urge him to participate in the same. In fact, the guardian informed petitioner, during one rare instance of contact via telephone, that he needed to contact the DHHR so that services could be set up in Nevada. Petitioner failed to initiate these services, such that a home study at his place of residence in Nevada could not be performed. Further, the child and several family members reported no visits from petitioner and when the child was asked whether he would like phone contact with petitioner, the child was fearful and refused. Thus, contrary to his assertions, it was petitioner who failed to maintain contact during the proceedings such that the child could be placed in his care. Accordingly, we find that the circuit court did not err in finding it was in the child's best interest to remain in a relative's care at the time the petition was filed due to petitioner's nearly complete absence from both the proceedings below and the child's life.

Petitioner also argues that the circuit court erred in terminating his parental rights when no evidence was presented that he abused or neglected the child. We disagree. Pursuant to West Virginia Code § 49-1-201, a "neglected child" is one

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

As mentioned above, the record demonstrates that petitioner maintained very little contact with the child prior to the initiation of the proceedings. The child reported that he had not visited with petitioner, and several family members reported that he did not maintain contact with the child. According to the guardian, petitioner admitted to failing to maintain significant contact with the child. In fact, continuances to the preliminary hearing had to be granted in order to effectuate service upon petitioner because his whereabouts were unknown. After locating petitioner and giving him notice of the proceedings, petitioner still failed to maintain contact with the child throughout the proceedings. Therefore, petitioner failed to provide for the child and evidenced a settled purpose to forego his parental responsibilities. *See* W.Va. Code § 49-1-201. As such, there was sufficient evidence to find that petitioner abused and/or neglected the child and he was adjudicated accordingly.

Moreover, we find that there was sufficient evidence to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(2), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control[.]" Petitioner was notified of the proceedings and informed that he needed to contact the DHHR in order to set up services through a family case plan, but failed to do so. The record indicates that petitioner only maintained contact with his attorney, the guardian, and the DHHR a few times and never attempted to initiate services. As such, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was in the child's best interest due to petitioner's willful refusal to follow through with a family case plan designed to lead to the child's return. As mentioned above, circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 18, 2018, order is hereby affirmed.

Affirmed.

4

**ISSUED**:  June 15, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating