STATE *ex rel.* CLYDE J. CASH

*v.*

FRANK A. LIVELY *and*
AUDREY JEWELL LIVELY, *his wife*

(No. 13123)

Submitted February 8, 1972.      Decided March 28, 1972.

802

*Spilman, Thomas, Battle & Klostermeyer, George G. Guthrie, John H. Tinney,* for relator.

*Lewis, Ciccarello, Masinter & Friedberg, Arthur T. Ciccarello, Martin J. Glasser,* for respondents.

CAPLAN, JUDGE:

Invoking the original jurisdiction of this Court the petitioner, Clyde J. Cash, seeks a writ of habeas corpus ordering the respondents, Frank A. Lively and Audrey Jewell Lively, his wife, to deliver to the petitioner the care, custody and control of Karen Kimberly Cash and Melinda Cheryl Cash. Upon the petition and its exhibits this Court issued a writ returnable September 28, 1971. The case was continued generally at that time for the purpose of taking depositions. On February 8, 1972 this proceeding was submitted for decision upon the petition and its exhibits; upon the answer of the respondents; upon the replication to the answer of the respondents; upon the depositions and exhibits filed therewith and upon briefs and oral arguments of counsel.

The petitioner and Judith Lynn Cash were married to each other in Kanawha County on July 13, 1960. Two children, Karen Kimberly Cash and Melinda Cheryl Cash, ages nine and eight, respectively, at the time this suit was

instituted, were born during this marriage. At the time of the marriage Clyde Cash was serving in the Air Force at Guthrie Air Force Base in Charleston. Upon receiving an honorable discharge he later joined the army for one year and upon discharge engaged in sporadic employment.

In the spring of 1965 marital troubles arose and the petitioner and his then wife separated, Judith taking the two children to Florida, where they thereafter resided. The petitioner was living in Buena Vista, Virginia, but when his wife left for Florida he moved to Roanoke, Virginia where he enrolled in a machinists school. He was paid $75.00 a week by the government for a period of approximately six months. During this time he was living with a woman whom he subsequently married. He was the father of two children born to her, one of whom admittedly was born out of wedlock, there being confusion as to whether the second child was born prior to the marriage.

The petitioner's wife, Judith, obtained a divorce in Escambia County, Florida by an order dated July 11, 1966. The court awarded the divorce and, not having jurisdiction of the petitioner, did not award any alimony or child support but did award the care, custody and control of the two minor children to Judith Lynn Cash.

According to the petitioner's deposition the petitioner visited Judith on several occasions while she was living in Florida. He did not, however, contribute to her support or to the support of the children. The petitioner alleges, however, that he offered to contribute to such support but that his wife consistently refused his offer. During the time Judith lived in Florida she maintained herself and her daughters by obtaining employment at a chemical plant but was never able to take care of all of their needs. Her income was supplemented by friends and by her parents, the respondents.

Subsequent to the divorce Judith became ill and on two occasions returned to Charleston where the last time she underwent an operation for the removal of a kidney.

There is some evidence which shows that the petitioner came to Charleston during her illness but did not stay any extended time. Furthermore, it is undisputed that he did not contribute to the payment of costs incurred by her during her illness. Judith returned to Florida after her illness and her condition failed to improve materially. The record is again in confusion as to whether or not the petitioner visited her and the children during this time. Judith's condition worsened and she died in Charleston, West Virginia on November 10, 1970. She died testate having written a will which was probated in Kanawha County. In this will she designated respondent, Audrey Jewell Lively, her mother, as trustee and executrix and also appointed her as the lawful guardian of her children. On December 14, 1970 the County Court of Kanawha County, on the application of Audrey Jewell Lively, appointed her guardian of Karen Kimberly Cash and Melinda Cheryl Cash.

On August 25, 1971 the petitioner filed a petition for a writ of habeas corpus seeking custody of the two minor children as aforesaid.

While the respondents have the physical custody of Karen Kimberly Cash and Melinda Cheryl Cash, it is incumbent upon this Court to decide who is entitled to the legal custody. This decision can be made only after a thorough examination of the record, consisting principally of depositions, and the application to the facts adduced of certain well accepted legal principles.

First and foremost in a contest involving the custody of a child is the consideration of that child's welfare. It has been held repeatedly by this Court that the welfare of the child is the polar star by which the discretion of the court will be guided. *State ex rel. Kiger* v. *Hancock,* 153 W.Va. 404, 168 S.E.2d 798; *Holstein* v. *Holstein,* 152 W.Va. 119, 160 S.E.2d 177; *State ex rel. Harmon* v. *Utterback,* 144 W.Va. 419, 108 S.E.2d 521; *Stout* v. *Massie,* 140 W.Va. 731, 88 S.E.2d 51; *Smith* v. *Smith,* 138 W.Va. 388, 76 S.E.2d 253;

*State ex rel. Lipscomb* v. *Joplin,* 131 W.Va. 302, 47 S.E.2d 221.

Another principle to which this Court has tenaciously adhered, and which is embodied in the provisions of Code, 1931, 44-10-7, is that the parents of any minor child are entitled to the custody of the person of such child and if there is only one parent surviving he or she is entitled to such custody. This right of the parent to custody, though not absolute, is founded on natural law because the child is his or hers to care for and rear. *State ex rel. Kiger* v. *Hancock,* 153 W.Va. 404, 168 S.E.2d 798; *Holstein* v. *Holstein,* 152 W.Va. 119, 160 S.E.2d 177; *Whiteman* v. *Robinson,* 145 W.Va. 685, 116 S.E.2d 691; *Hoy* v. *Dooley,* 144 W.Va. 64, 105 S.E.2d 877; *Green* v. *Campbell,* 35 W.Va. 698, 14 S.E. 212.

As noted above, this parental right to the custody of a child is not absolute and will not be honored and enforced if such parent is an unfit person because of misconduct, abandonment or other dereliction of duty, or has severed such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody. This proposition was succinctly stated in *State ex rel. Kiger* v. *Hancock,* 153 W.Va. 404, 168 S.E.2d 798. See also *Whiteman* v. *Robinson,* 145 W.Va. 685, 116 S.E.2d 691; *State ex rel. Harmon* v. *Utterback,* 144 W.Va. 419, 108 S.E.2d 521; and *Hoy* v. *Dooley,* 144 W.Va. 64, 105 S.E.2d. 877.

A further tenet of the law of child custody which is pertinent to the decision in the instant case holds that a parent, who, by reason of his own indiscretions, has lost the custody of his child, will not be permitted to regain that custody unless he or she can show that the proposed change of custody will materially promote the moral and physical welfare of said child. *Holstein* v. *Holstein,* 152 W.Va. 119, 160 S.E.2d 177; *Pugh* v. *Pugh,* 133 W.Va. 501, 56 S.E.2d 901, 15 A.L.R.2d 424; *State ex rel. Lipscomb* v. *Joplin,* 131 W.Va. 302, 47 S.E.2d 221; *Cunningham* v. *Barnes,* 37 W.Va. 746, 17 S.E. 308.

With the foregoing principles in mind we have carefully examined and have thoroughly considered the many depositions which constitute the evidence in this case. From the petitioner's own deposition it becomes quite clear that his interest in his children is of recent vintage. Upon being asked when he last saw his two children he answered very vaguely that he was not sure, but had seen them when their mother was in the hospital. The entire tenor of his testimony is that of vagueness and uncertainty. While he mentioned his visits to Florida, supposedly to visit his wife and children, it was evident that at no time did he spend any appreciable time with them. Most of that time, prior and subsequent to the divorce from Judith, the petitioner was living with the woman who bore his children and whom he subsequently married. He changed jobs every few months and never did contribute to the support of his children after his separation from his wife. Although he testified that his offer of money was refused by Judith, his testimony, especially in view of that of others on the matter of support, was weak and almost unbelievable.

Although the petitioner was under no obligation by reason of a court order to support these children, if he had the interest in them that he now professes to have, particularly in view of the severe illness of their mother, he would have insisted on providing for them. His deposition and those of others who were in a position to know, reveal unequivocally that he had little or no interest in his two daughters; that his visits, at best, were most infrequent; that he ignored them and failed to offer funds for support; that his interest outside the family circle excluded his daughters; and that the lack of interest and attention displayed by him amounted to an abandonment.

In an apparent attempt to establish his earning ability which would enable him to provide Karen and Melinda with a good home, the petitioner stated that he now works for the Virginia Electric Power Company and has been so employed for seventeen months. He testified that he and

his present wife reside in two apartments in a housing project; that she works as resident manager and receives $100.00 a month and a two bedroom apartment for her labors; that he does maintenance work and has thereby earned extra money.

He and his present wife have had two children of their own who live with them but his wife's two children born to a former marriage are being raised by her parents, she having relinquished custody of them. The petitioner acknowledged that his wife has never met or spoken to his two children and they have never seen her. All of the evidence shows that he and his wife are strangers to the subject children.

The evidence adduced from the depositions of the respondents and of several others who know the circumstances surrounding the children, reveals that the children now reside in favorable surroundings. The respondents by their actions have demonstrated their love and affection for these children, giving them not only material advantages but also moral and spiritual security. Respondent Audrey Jewell Lively is their maternal grandmother and while respondent Frank A. Lively is not their actual grandfather, he has well demonstrated his love and his willingness and desire to provide amply for their welfare. Both of the defendants are employed and have an income which is more than adequate to properly raise and educate these children. Their love and affection has been demonstrated throughout the years by their constant concern and care. Suffice to say that the record is replete with evidence that readily reveals the favorable surroundings in which these children will be raised from both a moral and physical standpoint.

Considering the behavioral pattern of the petitioner over the years in relation to his daughters and the present circumstances in which they are being raised, we are of the opinion and hold that the welfare of Karen and Melinda will best be served by refusing the request of the petitioner. Certainly this holding is consonant with the

principles heretofore stated. It considers, as controlling, the welfare of the children; it recognizes the rights of a parent, but, in view of the evidence of abandonment, acknowledges the failure of the petitioner to show that a change of custody would inure to the moral and physical benefit of the children; and it takes cognizance of the favorable home and environment afforded by the respondents.

For the reasons stated in this opinion, the writ of habeas corpus is denied.

*Writ denied.*