IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

**FILED**

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 21-0937
_____

STATE OF WEST VIRGINIA EX REL. D.B. AND J.N.,
FOSTER PARENTS OF R.L.,
Petitioners,

v.

THE HONORABLE THOMAS A. BEDELL,
JUDGE OF THE CIRCUIT COURT OF HARRISON COUNTY;
J.S. and T.S., INTERVENORS AND MATERNAL GRANDPARENTS OF R.L.;
AND THE WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN
RESOURCES,

Respondents.

_____

Petition for a Writ of Prohibition

WRIT GRANTED

_____


Submitted: April 12, 2022
Filed: April 26, 2022


Jeremy B. Cooper, Esq.                    Patrick Morrisey, Esq.
Blackwater Law PLLC                       Attorney General
Aspinwall, Pennsylvania                   Angela Alexander Walters, Esq.
Attorney for Petitioners                  Assistant Attorney General
                                          Caleb A. Seckman, Esq.
                                          Assistant Solicitor General
                                          Charleston, West Virginia
                                          Attorneys for WV DHHR

Aimee N. Goddard, Esq.
Legal Aid of West Virginia
Clarksburg, West Virginia
Attorney for Respondent Grandparents

Dreama D. Sinkkanen, Esq.
Sinkkanen Law Offices
Clarksburg, West Virginia
Guardian ad Litem

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICES WALKER and ARMSTEAD concur, in part, and dissent, in part, and reserve the right to file separate opinions.
JUSTICE MOATS, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "West Virginia Code § 49-3-1(a) [now W. Va. Code § 49-4-114(a)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The

i

statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 4, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

3.      "By specifying in West Virginia Code § 49-3-1(a)(3) [now W. Va. Code § 49-4-114(a)(3)] that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case." Syl. Pt. 5, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

4.      A prospective foster or adoptive parent has the right to appeal a decision of the West Virginia Department of Health and Human Resources denying him or her an approved home study as set forth in West Virginia Code § 49-2-105 (2015).

5.      An approved home study showing that a grandparent would be a suitable adoptive parent is a mandatory requirement for application of the grandparent preference as set forth in West Virginia Code § 49-4-114(a)(3) (2015). When a grandparent has not received an approved home study from the West Virginia Department of Health and Human Resources, a circuit court does not have the authority to disregard the absence of an approved home study and proceed to apply the grandparent preference.

ii

6. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302 (47 S.E.2d 221)." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W. Va. 801, 187 S.E.2d 601 (1972).

7. "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

**HUTCHISON, Chief Justice:**

The petitioners, D.B.[1] and J.N., the foster parents of R.L., seek a writ of prohibition to prevent the enforcement of the October 19, 2021, order of the Circuit Court of Harrison County that granted the motion of the respondents, J.S. and T.S., the maternal grandparents, for the temporary placement of R.L. in their home.[2] The petitioners contend that the circuit court exceeded its legitimate powers when it ordered that R.L. be removed from their custody without giving them adequate notice and a meaningful opportunity to be heard. The petitioners also contend that the circuit court exceeded its legitimate powers by ordering R.L. to be placed with the respondent grandparents despite their failed home study and without regard for R.L.'s best interests. Upon consideration of the briefs and arguments of the parties, the appendix record, and the applicable authorities, we grant the writ of prohibition.

## I. Facts and Procedural Background

An abuse and neglect proceeding was instituted by the respondent West Virginia Department of Health and Human Resources ("DHHR") against R.L.'s biological parents on April 8, 2020. Neither R.L., nor his three siblings, were initially removed from the custody of their parents because they had already been left in the care of other

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W.Va. R. App. Proc. 40(e); *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] This Court issued a stay of the circuit court's order on December 8, 2021.

individuals. At that time, R.L. and one of his brothers were residing with the respondent grandparents.[3] After R.L.'s mother took R.L. and his brother from the respondent grandparents' home in mid-April 2020, the DHHR immediately removed the children from their mother's custody. At that time, the respondent grandparents sought custody of the children, but the DHHR informed them that the children could not be placed back in their home due to the maternal grandfather's 1992 conviction for sexual battery. R.L. was then placed with his maternal aunt where he resided for approximately one year. During that time, the parental rights of R.L.'s parents were terminated.

R.L. was placed with the petitioners on April 28, 2021, after his maternal aunt informed the DHHR that she did not wish to adopt him. One day later, the respondent grandparents filed a motion to intervene and a motion for an expedited home study with the circuit court. The petitioners did not receive notice of these motions, nor were they informed of the hearing on the motions that was later held by the circuit court on May 24, 2021. Following that hearing, the circuit court granted the motions of the grandparents and ordered the DHHR to perform an expedited home study. The respondent grandparents then

---

[3] The record indicates that R.L and his brother resided with the respondent grandparents for several weeks in March and April 2020 due to their mother's incarceration. The respondent grandfather was initially named as a non-offending party in the underlying abuse and neglect proceeding. According to the guardian ad litem, he was dismissed as a party on April 29, 2020, without objection.

filed a motion seeking temporary and permanent placement of R.L.[4] Again, the petitioners did not receive notice of this motion. The petitioners eventually learned about the grandparents' efforts to obtain custody of R.L. from the foster parents of R.L.'s siblings. The petitioners then contacted R.L.'s guardian ad litem who informed them that the circuit court had scheduled a hearing on the respondent grandparents' motion for temporary and permanent placement of R.L.

The hearing on the respondent grandparents' motion for placement of R.L. in their home was held on August 20, 2021. The petitioners, having only learned about the hearing from the guardian ad litem, appeared, but they were unrepresented by counsel. According to the petitioners, the circuit court permitted them to attend the hearing but only allowed one of them to make a brief proffer.[5]

Two months after the placement hearing, the circuit court entered its October 19, 2021, order granting the motion of the respondent grandparents for temporary

---

[4] The respondent grandparents also sought visitation and telephone contact with R.L.'s siblings, who are in the custody of other individuals. Through its October 19, 2021, order, the circuit ruled on that issue. Our decision in this matter does not affect the circuit court's order as it pertains to R.L.'s siblings.

[5] The circuit court's order indicates that R.L.'s guardian ad litem offered the testimony of petitioner D.B. Because they were not afforded the status of a party during the proceedings below, the petitioners had no ability to obtain a transcript of the proceedings that occurred and, therefore, were unable to provide it to this Court as part of the appendix record.

placement of R.L., with a finding that his best interests would be served by achieving permanency through adoption by them. It is clear from the circuit court's order that the primary focus of the hearing was the respondent grandfather's sexual battery conviction and whether it precluded the respondent grandparents from obtaining custody of R.L. According to the circuit court's order, Meaghen Broadwater, a DHHR home finding specialist, testified that the respondent grandparents did not receive an approved home study only because of the respondent grandfather's conviction for sexual battery, which she indicated is a non-waivable offense under the DHHR's home finding policy. The circuit court's order states, however, that Ms. Broadwater did not testify that she informed the respondent grandparents of their right to grieve their denial of a favorable home study pursuant to the DHHR's policy.

The circuit court's order indicates that the respondent grandfather also testified and provided details about his criminal history and the events that led to his conviction. According to the order, the respondent grandfather stated that the offense occurred when he was nineteen years old and while he was in college. He further testified that both he and the victim, another college student, were intoxicated. In its findings of fact, the circuit court indicated that

> [The respondent grandfather] expressed extreme remorse for his actions and disgust at the selfish person he was while in college. Although he testified about his intoxicated condition, he repeatedly stated that he does not blame the incident on alcohol and that he knew the victim could not consent.

4

The circuit court further found that the respondent grandfather was "sufficiently regretful of his past crime and there was no evidence presented to suggest that [he] poses a danger to the infant children herein or any other person." Based on these findings and others, including the fact that the respondent grandfather has never been arrested or charged with any other crime, the circuit court concluded that "[d]espite the denial of their home study and [the respondent grandfather's] criminal history, the Intervenors [respondent grandparents] are suitable adoptive parents and adoption by the [respondent grandparents] is in [R.L.'s] best interests." Thus, the circuit court granted the respondent grandparents' motion for temporary placement of R.L. with a finding that he should achieve permanency through adoption by them.

According to the petitioners, they did not receive notice of the circuit court's decision until ten days after the order was entered. They then obtained counsel and filed this petition for a writ of prohibition.

## II. Standard for Granting Writ of Prohibition

West Virginia Code § 53-1-1 (1923) provides that a "writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." *See also* Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial

5

court has no jurisdiction or having such jurisdiction exceeds its legitimate powers."). In this case, the petitioners assert that the circuit court exceeded its legitimate powers when it ordered R.L. to be removed from their home and placed with the respondent grandparents.

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With this standard in mind, we consider the parties' arguments.

### III. Discussion

The petitioners argue that the circuit court exceeded its legitimate powers in two ways: first, by ruling upon the respondent grandparents' motions for intervention and custody of R.L. without giving them adequate notice and a meaningful opportunity to be heard and, second, by ordering R.L. to be placed in the respondent grandparents' home despite their failed home study and without regard for R.L.'s best interests. The petitioners

6

contend that they satisfy the first two *Hoover* factors because they lack any other method to seek redress of the circuit court's order as they had not moved to intervene in the proceedings below and, therefore, had no right to appeal the circuit court's decision.[6]

Upon review, we find that the petitioners have satisfied the first two *Hoover* factors. We reject the respondent grandparents' argument that the petitioners should have filed a motion to intervene below, which they contend would have given the petitioners the right to seek reconsideration of the circuit court's decision and/or appeal the ruling. The record as presented to us indicates that the petitioners had been advised by the DHHR that the permanency plan for R.L. was adoption in their home because the respondent grandparents were not a suitable placement due to the respondent grandfather's conviction. Consequently, the petitioners had no reason to believe that they needed to intervene in the proceedings below, and by the time they learned the respondent grandparents were seeking custody of R.L., the circuit court had already ruled upon the respondent grandparents' motion to intervene and scheduled the hearing on their motion for placement. Given these particular circumstances, the only means the petitioners have to seek relief is through prohibition.

---

[6] The guardian ad litem has filed a brief in support of the petitioners' request for a writ of prohibition. The DHHR filed a summary response stating that although it objected to the removal of R.L. from the petitioners' custody during the proceedings below, it cannot now assert that the circuit court exceeded its legitimate powers or disregarded R.L.'s best interests when it ordered him to be placed with the respondent grandparents.

Having found the first two *Hoover* factors satisfied, we proceed to consider whether the circuit court exceeded its legitimate powers. The petitioners argue that as R.L.'s foster parents they were entitled to notice of the grandparents' motions and the opportunity to be heard. They contend that they were denied their right to meaningfully participate in the hearings held by the circuit court on the respondent grandparents' motions and never had the chance to assert their interests relating to the respondent grandparents' request for placement of R.L. We agree.

This Court has recognized that "West Virginia Code § 49-4-601(h) establishes a 'two-tiered framework'" whereby "the Legislature has provided a clear mandate that foster parents, preadoptive parents, and relative caregivers 'shall . . . have a meaningful opportunity to be heard' in the course of an abuse and neglect case." *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018) (citation omitted). In that regard, West Virginia Code § 49-4-601(h) (2019) provides:

> In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. *Foster parents, pre-adoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.*

(Emphasis added). We have interpreted the last sentence of this statute to mean that "a person who obtains physical custody *after* the initiation of abuse and neglect proceedings—such as a foster parent—does not enjoy the same statutory right of participation as is extended to parents and pre-petition custodians" but does "have the right

8

to be heard regarding the children's best interest." *Beane*, 240 W.Va. at 648, 814 S.E.2d 665 (quotations and citation omitted). More specifically, "a meaningful opportunity to be heard includes notice of the right to be heard on all proceedings insofar as 'pertinent information regarding the child' is relevant to the circuit court's consideration." *State ex rel. C.H. v. Faircloth,* 240 W. Va. 729, 739, 815 S.E.2d 540, 550 (2018).[7]

Like the case at bar, the foster parents in *Beane* sought a writ of prohibition after a circuit court granted a paternal aunt and grandmother's motion for visitation with the child that had been placed in their care. The aunt was also seeking permanent custody of the child, and the foster parents were never served with the motions and were never notified of the circuit court hearing upon the motion for visitation thus denying them the opportunity to be heard. In granting the foster parents their requested relief in *Beane*, this Court explained:

> By ruling on the visitation issue without affording the petitioners notice and the opportunity to be heard, the circuit court exceeded its authority, entitling the petitioners to the writ of prohibition.
>
> . . . .

---

[7] We have observed that there is nothing in West Virginia Code § 49-4-601 to -610 that precludes foster parents from "being granted party-intervenor status where appropriate." *Faircloth*, 240 W. Va. at 737, 815 S.E.2d at 548. We have also held that "[f]oster parents who have been granted the right to intervene are entitled to all rights and responsibilities of any other party to the action." *Id.* at 732, 815 S.E.2d at 542, syl. pt. 4, in part. Such rights include the opportunity to present and cross-examine witnesses. Accordingly, by obtaining intervenor status when this case is returned to the circuit court, the petitioners would have additional rights beyond their statutory right to a meaningful opportunity to be heard.

> [The foster parents] most certainly had a right to be
> heard on these issues in a meaningful way—and we agree that
> a lack of information about the respondents' motion deprived
> the petitioners of a meaningful opportunity to be heard.

*Id.* at 648-49, 814 S.E.2d at 665-66. The same is true in this case. Because the respondent grandparents never served their motions for intervention and placement of R.L. upon the petitioners and because the petitioners only learned of the grandparents' actions from the other foster parents, the petitioners were denied their statutory right to notice and a meaningful opportunity to be heard. The respondent grandparents argue that because the petitioners attended the placement hearing and one of them was allowed to testify, they were afforded their statutory right to be heard. We disagree. It is clear that when the petitioners appeared at the August 20, 2021, hearing, they had very little information regarding the respondent grandparents' motions and, importantly, had not even had the chance to secure counsel to represent their interests. Given the circumstances, we find that the petitioners were denied their right to notice and the opportunity to be heard in a meaningful way, and, therefore, the circuit court exceeded its legitimate powers when it proceeded to rule upon the respondent grandparents' motion for placement of R.L.

The petitioners also contend that the circuit court exceeded its legitimate powers by placing R.L. with the respondent grandparents despite their failed home study and without regard for R.L.'s best interests. With respect to the respondent grandparents' failed home study, the petitioners argue that even though there is a statutory preference for placement of children with their grandparents upon the termination of their parents'

10

parental rights,[8] grandparents must be determined to be "fit" in order to obtain placement of their grandchildren, which includes an approved home study. In support of their argument, the petitioners rely upon the following holdings in syllabus points four and five, respectively, of *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005):

> West Virginia Code § 49-3-1(a) [now W. Va. Code § 49-4-114(a)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.
>
> By specifying in West Virginia Code § 49–3–1(a)(3) [now W. Va. Code § 49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and

---

[8] West Virginia Code § 49-4-114(a)(3) (2015) provides:

> For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

11

Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

The petitioners contend that by using the words "must show" in syllabus point five of *Napoleon S.*, this Court recognized that an approved home study is a mandatory prerequisite before a determination can be made as to whether placement with grandparents is in a child's best interests. The petitioners further argue that because the respondent grandparents did not and never can obtain an approved home study due to the respondent grandfather's conviction for sexual battery, the circuit court exceeded its legitimate powers when it ruled that the respondent grandfather's criminal history did not preclude the respondent grandparents from obtaining temporary and then permanent custody of R.L. through adoption.

Simply stated, the petitioners contend that the circuit court was without authority to grant the respondent grandfather a waiver for his sexual battery conviction and place R.L in his home because DHHR's home finding policy precludes the granting of a waiver for the type of offense he committed. Upon review, we agree with the petitioners that at the time of the proceedings below, the circuit court was without authority to disregard the fact that the respondent grandparents did not have an approved home study. However, as the circuit court noted in its order, there was no testimony that the respondent grandfather had been informed that he had the right to appeal the decision denying him an approved home study due to his conviction for sexual battery.

12

Pursuant to West Virginia Code § 49-2-114 (2015),[9] DHHR's *Homefinding Policy* requires that individuals applying to become foster or adoptive parents not have a criminal or abusive background. *See W. Va. Dep't of Health and Human Resources Home Finding Policy,* https://dhhr.wv.gov/bcf/policy/Documents/Homefinding%20Policy.pdf, at *30 (last visited April 25, 2022). To ensure that this requirement is met, a criminal background check must be completed upon any potential foster and/or adoptive parent. *Id.* The policy further provides that no prospective foster or adoptive parent shall be approved or considered for a waiver of this requirement if they have committed certain enumerated crimes. *Id.* at 36-40. Sexual offenses are included among the categories of crimes for which a waiver may not be granted by the DHHR under this policy. *Id.* In the event an applicant is determined to have a criminal history that falls within one of the categories for which a waiver may not be granted by the DHHR, the policy requires the DHHR to notify the applicant that their application is going to be denied. *Id.* The policy also provides that the DHHR must inform the applicant of the DHHR's grievance process. *Id.*

The DHHR's grievance process is set forth in its "Common Chapters Manual." *See W. Va. Dep't of Health and Human Resources Common Chapter Manual,* https://www.wvdhhr.org/oig/pdf/OIG/CommonChapters700.pdf?msclkid=2294be28c040 11eca6d4a17dfcac984e, (last visited April 25, 2022). Subpart B applies to hearings on

---

[9] West Virginia Code § 49-2-114, which is titled "Application for license and approval," sets forth the home study requirements.

matters related to foster care and adoption and provides that they are subject to the Administrative Procedures Act found in West Virginia Code § 29A-5-1 to -5. *Id.* at \*26. Likewise, West Virginia Code § 49-2-105 (2015) provides,

> Any person, corporation, governmental official or child welfare agency, aggrieved by a decision of the secretary made pursuant to this chapter may contest the decision upon making a request for a hearing by the secretary within thirty days of receipt of notice of the decision. Administrative and judicial review shall be made in accordance with article five, chapter twenty-nine-a of this code. Any decision issued by the secretary may be made effective from the date of issuance. Immediate relief therefrom may be obtained upon a showing of good cause made by verified petition to the Circuit Court of Kanawha County or the circuit court of any county where the affected facility or child welfare agency may be located. The dependency of administrative or judicial review shall not prevent the secretary from obtaining injunctive relief pursuant to section one hundred twenty, article two of this chapter.

Thus, by statute, decisions made by the DHHR with respect to whether a prospective foster or adoptive parent has satisfied the requirements for an approved home study are ultimately subject to judicial review. Accordingly, for clarification purposes, we now hold that a prospective foster or adoptive parent has the right to appeal a decision of the DHHR denying him or her an approved home study as set forth in West Virginia Code § 49-2-105 (2015).

In light of this holding, we reject the petitioners' contention that the respondent grandfather can never obtain an approved home study because of his prior criminal conviction. As discussed above, the circuit court's order indicates that he was never informed by the DHHR that he could grieve its decision denying him an approved

14

home study. Consequently, the respondent grandfather never had the opportunity to seek redress of the DHHR's decision that he could not obtain a waiver with respect to his conviction through the grievance process.[10]

Although we have determined that the respondent grandfather could possibly obtain a waiver for his conviction through the grievance process, the fact remains that he had not done so at the time the circuit court held the hearing on the respondent grandparents' motion for placement of R.L. As we indicated, in *Napoleon S.* and now hold, an approved home study showing that a grandparent would be a suitable adoptive parent is a mandatory requirement for application of the grandparent preference as set forth in West Virginia Code § 49-4-114(a)(3). When a grandparent has not received an approved home study from the DHHR, a circuit court does not have the authority to disregard the absence of an approved home study and proceed to apply the grandparent preference. Therefore, because the respondent grandfather had not pursued a grievance of the DHHR's decision denying him an approved home study and because the issue was not before the circuit court as part of the grievance process afforded by West Virginia Code § 49-2-105, we find that the circuit court exceeded its legitimate powers when it ruled that the respondent grandfather's conviction did not preclude him from obtaining placement of R.L.

---

[10] Whether the respondent grandfather may now grieve the DHHR's decision denying him an approved home study due to his sexual battery conviction is not an issue that is before this Court in this original jurisdiction matter. Therefore, we decline to address it.

The last matter we must consider is the petitioners' contention that the circuit court exceeded its legitimate powers by disregarding R.L.'s best interests when it ruled that he should be placed with the respondent grandparents. In its order, the circuit court made the following three findings with respect to R.L.'s best interests:

> The Court FINDS that [R.L.]'s best interest would be served by placing him temporarily with his maternal grandparents., [J.S. and T.S.].
>
> The Court further FINDS that [R.L.'s] best interest would be served best by achieving permanency through adoption by his maternal grandparents, [J.S. and T.S.].
>
> The Court acknowledges the bond that has likely formed between [R.L.] and his current foster parents [the petitioners]. However, the Court FINDS the longstanding bond and relationship that [R.L.] shares with the Intervenors [the respondent grandparents] is greater than any bond developed over the approximately four (4) months he has resided with his current foster parents.

The petitioners assert that by "limiting them to an off-the-cuff proffer, the [c]ircuit [c]ourt deprived itself of relevant information in making an accurate best-interest analysis."

Upon review of the circuit court's order, we find nothing to indicate that any consideration was given to the information provided by the petitioners through their proffer. It appears that the circuit court was informed by the petitioners that R.L. was doing well in their home. According to the brief filed by the respondent grandparents, "[Petitioner] D.B. provided an overview of R.L.'s improvements while in Petitioners' home, discussed the relationship that had developed between them and expressed their willingness and desire to adopt R.L." Inexplicably, there is no mention of this testimony

16

in the circuit court's order. As a result, we are unable to determine what weight, if any, was given to petitioner D.B.'s testimony in the circuit court's analysis of R.L.'s best interests. Clearly, in these circumstances, the consideration of R.L.'s best interests must take into account his current placement and the potential disruption that might occur with a change in custody.

Having considered the findings made in the circuit court's order, we agree with the petitioners that R.L.'s best interests were not afforded the thorough consideration that is required. As this Court has long held, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302 (47 S.E.2d 221)." Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W. Va. 801, 187 S.E.2d 601 (1972). To that end, "this Court has emphatically declared the requirement for a thorough consideration of the best interests of the child and changed circumstances in all matters relating to altering custody of children." *In re K.H.*, 235 W. Va. 254, 258-259, 773 S.E.2d 20, 24-25 (2015). In fact, "[a] child's best interests have been heralded as the paramount consideration by which all custody determinations should be made." *Id.* Here, the circuit court's analysis fell short of satisfying this critical consideration.

## IV. Conclusion

Based on all the above, we find that the circuit court exceeded its legitimate powers and committed clear error as a matter of law when it granted the respondent

17

grandparents' motion for temporary custody of R.L. and found that he should achieve permanency through adoption by them. Accordingly, we grant this petition for a writ of prohibition and prohibit enforcement of the circuit court's October 19, 2021, order. Having found that the petitioners are entitled to the relief they seek, we take this opportunity to reiterate again that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Accordingly, upon issuance of the writ, the circuit court should take immediate steps to achieve permanency for R.L.

The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Writ granted.

18